```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------
In re
         GRACE MANOR HEALTH CARE FACILITY, INC.         09-11456 B

                                                        DECISION & ORDER
                        Debtor
-----------------------------------------------------
MARK J. SCHLANT, TRUSTEE IN BANKRUPTCY
FOR GRACE MANOR HEALTH CARE FACILITY, INC.

                        Plaintiff

         v.                                             AP 11-1029 B

BUFFALO PHARMACIES, INC. d/b/a Buffalo Pharmacy Inst.

                        Defendant
-----------------------------------------------------
```

                Zdarsky, Sawicki & Agostinelli LLP
                Mark J. Schlant, Esq., of counsel
                404 Cathedral Place
                298 Main Street
                Buffalo, New York 14202
                Attorneys for the Trustee

                Harris Beach PLLC
                Kevin Tompsett, Esq., of counsel
                99 Garnsey Road
                Pittsford, New York 14534
                Attorneys for Buffalo Pharmacies, Inc.

Bucki, Chief U.S.B.J., W.D.N.Y.

        In this adversary proceeding, the Chapter 7 trustee seeks to recover six allegedly preferential payments made on account of four invoices resulting from the purchase of pharmaceuticals. The defendant responds that the transfers occurred in the ordinary course of business, so as to be exempt under 11 U.S.C. §547(c)(2) from a preference recovery. The central issue is how to define ordinary course in the context of management by a state receiver.

        Prior to the filing of its bankruptcy petition, Grace Manor Health Care Facility, Inc., was the owner of a nursing home located on Symphony Circle in the City of Buffalo, New York. As a provider of health services, this nursing home was subject to supervision by the New York State Department of Health. Pursuant to an investigation

of the nursing home, the Department of Health initially caused the appointment of a receiver and then, during the course of the receivership, ordered a closing of the facility. The receiver was an entity called Kaleida Health, which directed operations from March 28, 2008, until Grace Manor ceased activity at the end of March 2009.

On behalf of Grace Manor, the receiver signed a Pharmacy Services Agreement with Buffalo Pharmacies, Inc., on September 3, 2008. Pursuant to this contract, Buffalo Pharmacies agreed to provide the medications and medical supplies needed at the nursing home on and after the first day of October. Paragraph 3.1 of the agreement stated that Buffalo Pharmacies would submit a monthly invoice and that Grace Manor "will remit payment in full within ninety (90) days of the billing date." Accordingly, on account of its deliveries, Buffalo Pharmacies issued invoices on November 3 and December 1 of 2008, and on January 2 and February 2 of 2009. Grace Manor paid these invoices by checks that cleared on various dates between January 12 and April 6, 2009. As applied, each payment was made no sooner than 60 and no more that 73 days after the relevant date of invoice.

Grace Manor Health Care Facility, Inc., filed a petition for relief under Chapter 7 of the Bankruptcy Code on April 8, 2009. Thereafter, the case trustee commenced the present adversary proceeding under 11 U.S.C. § 547 to recover allegedly preferential payments made to Buffalo Pharmacies. The defendant concedes that the debtor was insolvent on the dates of payment to Buffalo Pharmacies, and that the disputed payments occurred within ninety days of the debtor's bankruptcy filing. Meanwhile, the trustee acknowledges that the debtor received some new value from Buffalo Pharmacies subsequent to the date of the various payments. Accordingly, as required by 11 U.S.C. § 547(c)(4), the trustee has agreed to allow credit for that new value, so that his preference claim now totals $40,679.79. As to this net balance, Buffalo Pharmacies argues only the defense of 11 U.S.C. § 547(c)(2), which provides as follows:

> "The trustee may not avoid under this section a transfer . . . (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was – (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms."

Asserting the absence of any factual dispute, the trustee and the defendant have cross moved for summary judgment. The defendant contends that the agreement between the parties should define their ordinary course. In as much as the debtor paid each invoice within the ninety days allowed under that agreement, the defendant views those payments as being made in the ordinary course of the business and financial affairs of both Grace Manor and Buffalo Pharmacies. In the defendant's view, therefore, the payments are transfers unavoidable under section 547(c)(2)(A). The trustee disagrees. He maintains that with no prior history of business with Grace Manor, Buffalo Pharmacies is unable to establish the existence of an ordinary course. The trustee argues alternatively that at a minimum, ordinary course should reflect the usual and customary practices of a business. Otherwise, in dealing with troubled customers, suppliers could draft contracts with special repayment terms that effectively preempt a preference attack. In contradiction with the ninety day repayment provision of the contract, Buffalo Pharmacies used invoice forms indicating that payment was due upon receipt. The trustee contends, therefore, that ordinary course of practice would here require payment within thirty days of invoice. Finally, the trustee argues in any event that the final payment is outside the ordinary course, in that the receiver paid it after the debtor had ceased all business operations and within only two days of the filing of a bankruptcy petition.

If the officers and directors of Grace Manor Health Care Facility had been in charge of the debtor's operations, I might have rejected the ordinary course of business defense. At the time of the challenged transactions, however, a receiver appointed

under state law was managing the affairs of the debtor. From the perspective of both buyer and seller, a receivership will fundamentally change the meaning of ordinary course. A receiver serves as a fiduciary. Suppliers no longer deal with a management that is charged with a duty to maximize profit for shareholders. Nor do circumstances of insolvency necessarily control, to the effect that the duties of management shift exclusively to the benefit of creditors. *See Wallach v. Buchheit (In re Northstar Development Corp.)*, 465 B.R. 6, 17 (Bankr. W.D.N.Y. 2012). Rather, pursuant to the authority of the New York State Department of Health, the receiver was charged with an obligation to protect the interests of nursing home residents. At the time of the challenged transfers, the debtor's ordinary course of business had become the course of conduct that was reasonably needed to fulfill the mission of the receivership.

In the present instance, the responsibilities of the receiver included the health and welfare of nursing home patients. Accordingly, to serve as receiver, the Department of Health had designated an entity skilled in the delivery of medical services. To fulfill its responsibility for patients, the receiver needed to assure a reliable delivery of medicine and medical supplies. In this context, Kaleida Health acted in the ordinary course when it negotiated a contract with Buffalo Pharmacies. Although ninety day payment terms might be unusual in other situations, the receiver here served a special need. Nor should the supplier be penalized in its reasonable cooperation for the sake of elderly residents. Under the special circumstances of the instant receivership, therefore, the contract terms will define the ordinary course of payment.

The defense of section 547(c)(2) includes two main elements: first, that the debtor incur a debt in the ordinary course; and second, that payment either be "(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) according to ordinary business terms." Here, the receiver incurred a debt in the ordinary course of both the operations of the receivership and the operations of the defendant as a seller of pharmaceuticals. The record contains no proof under

section 547(c)(2)(B) with regard to ordinary business terms for a nursing home in receivership. However, within the negotiated term of ninety days, the receiver effected transfers that were ordinary within the meaning of section 547(c)(2)(A) for this business now operating in receivership. Further, throughout the course of their dealings, the parties understood that the debtor operated in receivership. Facing the prospect of imminent closure, the parties could reasonably anticipate that Buffalo Pharmacies might receive a final payment subsequent to the termination of business activity. Consequently, the debtor's ordinary course of activity would here even include the final transfer received shortly after the nursing home had closed. As to all payments, therefore, the defendant has satisfied its burden to prove the elements of the ordinary course of business defense of 11 U.S.C. § 547(c)(2).

In rendering the present decision, this court does not suggest that every transaction with a state receiver will be exempt from preference attack. As in all preference disputes, a defense under section 547(c)(2)(A) will require a showing that payment was made "in the ordinary course of business or financial affairs of the debtor and the transferee." After the appointment of Kaleida Health as a receiver, however, the debtor's ordinary course became the ordinary course of activity within the receivership. When exigencies of care for elderly patients necessitated purchases from a new supplier of pharmaceuticals, the terms of that special and necessary arrangement must serve to define ordinary course.

For the reasons stated herein, the defendant's motion for summary judgment is in all respects granted and the plaintiff's cross motion is denied. Accordingly, the trustee's complaint against Buffalo Pharmacies, Inc., is dismissed.

So ordered.

Dated:  Buffalo, New York          /s/      HON. CARL L. BUCKI
        March 9, 2012              Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.